IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| **Allegra Schawe-Lane,** | Case no. |
| and | |
| **Dane Lane,** | |
| Plaintiffs, | **Complaint and Jury Demand** |
| v. | |
| **Amazon.com.KYDC LLC,** | |
| Defendant. | |

## PRELIMINARY STATEMENT

1.  This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq., Kentucky Civil Rights Act, KRS § 344, et seq., Kentucky Wages and Hours Act, KRS § 337, et seq., and Kentucky common law concerning premises liability and breach of contract.

2.  Plaintiffs Ms. Allegra Schawe-Lane and Mr. Dane Lane experienced escalating and unrelenting discrimination and harassment because of sex and disability by employees, supervisors, and managers of Defendant Amazon.com.KYDC LLC, as set forth below.

3.  Further, while on property controlled and secured by Defendant Amazon.com.KYDC LLC, Plaintiffs' car was tampered with and its brake line was severed, putting Plaintiffs at significant risk of serious injury or death.

4. Plaintiffs were also subjected to improper withholding of wages and multiple instances of tortious conduct by employees, supervisors, and managers of Defendant Amazon.com.KYDC LLC.

## PARTIES

5. Plaintiff Ms. Allegra Schawe-Lane ("Ms. Schawe-Lane" or "Plaintiff Ms. Schawe-Lane") worked as an employee for Defendant Amazon.com.KYDC LLC at shipping facilities it operated in Hebron, Kentucky from October 2014 through October 3, 2015.

6. Ms. Schawe-Lane resides in Kenton County, Kentucky.

7. Plaintiff Mr. Dane Lane ("Mr. Lane" or "Plaintiff Mr. Lane") worked as an employee for Defendant Amazon.com.KYDC LLC at shipping facilities it operated in Hebron, Kentucky from October 2014 through October 3, 2015.

8. Mr. Lane resides in Kenton County, Kentucky.

9. Plaintiff Mr. Lane and Plaintiff Ms. Schawe-lane (together referred to as "Plaintiffs") are in a long-term, committed relationship and hold themselves out as husband and wife.

10. Defendant Amazon.com.KYDC LLC ("Defendant Amazon" or "Amazon"), a Delaware corporation, with a principal office address at 1850 Mercer Road, Lexington, Fayette County, Kentucky, has continuously been doing business in the state of Kentucky, and has continuously employed at least fifteen (15) employees.

11. Defendant Amazon owns and operates facilities in Kentucky, including the facility relevant to this lawsuit located at 3680 Langley Drive, Hebron, Kentucky.

12. At all relevant times, Defendant Amazon has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## PROCEDURAL HISTORY

13. Plaintiff Ms. Schawe-Lane filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission") alleging violations of Title VII and the ADA, including discrimination based on sex, disability, retaliation, hostile work environment, and retaliatory hostile work environment, by Defendant Amazon on or about August 21, 2015.

14. Plaintiff Mr. Lane filed a charge of discrimination with the Equal Employment Opportunity Commission alleging violations of Title VII and the ADA, including discrimination based on sex, disability, retaliation, hostile work environment, and retaliatory hostile work environment, by Defendant Amazon on or about August 21, 2015.

15. Upon information and belief, the EEOC provided Defendant Amazon with notice of the charges of discrimination.

16. The EEOC investigated the charges of discrimination.

17. On February 14, 2017, based on evidence uncovered during the EEOC's investigation, the EEOC issued a letter of determination to Ms. Schawe-Lane.

18. In the February 14, 2017 letter of determination to Ms. Schawe-Lane, the EEOC found that evidence substantiated that Defendant Amazon had discriminated against Ms. Schawe-Lane because of sex and disability in violation of Title VII and the ADA, subjected Ms. Schawe-Lane to sexual harassment and other harassment, and failed to take corrective action following her complaints. Further, the EEOC found that evidence substantiated Ms. Schawe-Lane's charge that Defendant Amazon denied her reasonable accommodation, subjected her to different terms and conditions of employment, retaliated against her for complaining about discrimination, and constructively discharged her. Additionally, the EEOC's investigation revealed that Defendant Amazon failed to retain records in accordance with statutory recordkeeping provisions.

19. On February 14, 2017, based on evidence uncovered during the EEOC's investigation, the EEOC issued a letter of determination to Mr. Lane.

20. In the February 14, 2017 letter of determination to Mr. Lane, the EEOC found that evidence substantiated that Defendant Amazon had discriminated against Mr. Lane because of sex and disability in violation of Title VII and the ADA, subjected Mr. Lane to sexual harassment and other harassment, and failed to take corrective action following his complaints. Further, the EEOC found that evidence substantiated Mr. Lane's charge that Defendant Amazon denied him reasonable accommodation, subjected him to different terms and conditions of employment, retaliated against him for complaining about discrimination, and constructively discharged him. Additionally, the EEOC's investigation revealed that Defendant Amazon failed to retain records in accordance with statutory recordkeeping provisions.

21. The EEOC completed its investigations into Ms. Schawe-Lane and Mr. Lane's charges of discrimination against Defendant Amazon.

22. On May 17, 2017, the EEOC issued a Notice of Right to Sue letter to Plaintiff Ms. Schawe-Lane concerning her charges of discrimination against Defendant Amazon.

23. On May 17, 2017, the EEOC issued a Notice of Right to Sue letter to Plaintiff Mr. Dane Lane concerning his charges of discrimination against Defendant Amazon.

24. Plaintiffs took all necessary steps to exhaust their administrative remedies.

25. Plaintiffs took all necessary steps to fulfill all conditions precedent to the commencement of this lawsuit.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action is based on Title VII of the Civil Rights Act and the Americans with Disabilities Act, and pursuant to 28 U.S.C. § 1337 because the action is based on a federal statute regulating commerce.

27. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as the federal claims.

28. Venue is proper in the United States District Court for the Eastern District of Kentucky pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the unlawful employment practices is alleged to have been committed within the United States District Court for the Eastern District of Kentucky.

29. Venue is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices are alleged to have been committed within the United States District Court for the Eastern District of Kentucky.

30. A substantial part of the events or omissions giving rise to the claims herein occurred in the Northern Division at Covington.

**FACTS**

31. Plaintiff Ms. Allegra Schawe-Lane is a female citizen of the United States.

32. Ms. Schawe-Lane has a female gender identity.

33. Ms. Schawe-Lane has a feminine gender expression.

34. Ms. Schawe-Lane is a woman who is transgender.

35. Plaintiff Mr. Dane Lane is a male citizen of the United States.

36. Mr. Lane has a male gender identity.

37. Mr. Lane has a masculine gender expression.

38. Mr. Lane is a man who is not transgender.

39. Mr. Lane and Ms. Schawe-Lane are in a long-term, committed relationship.

40. Mr. Lane and Ms. Schawe-Lane have, at all times relevant to this lawsuit, held themselves out as husband and wife.

**Sex, Gender, Gender Expression, and Gender Identity**

41. *Sex* is a term that includes gender, gender expression, and gender identity within its meaning.

42. *Sex stereotyping* refers to the application by an employer of stereotypes related to sex to restrict, disparage, or discriminate on the basis of an employee's gender expression or identity.

43. *Gender* refers to cultural expectations specific to the sexes.

44. *Gender expression* refers to a person's gender-related appearance and behavior, whether or not stereotypically associated with the person's sex assigned at birth.

45. *Gender identity* refers to a person's internal sense of sex, being male, female, or other.

46. Gender identity is intractably rooted at a very early age and cannot be changed.

47. *Transgender individuals* are people who have a gender identity that does not match the sex they were assigned at birth.

48. *Gender transition*. Transgender individuals often seek out legal, social, and medical means of aligning external manifestations of their sex and gender with their gender identity. This process is colloquially known as *gender transition* or *transition*.

49. Discrimination against transgender people for being transgender is based on their sex, sex stereotyping, gender, gender expression, gender identity, or gender transition.

**Gender Dysphoria**

50. *Gender dysphoria* is the formal diagnosis used by physicians and psychologists to describe people who experience significant distress with the sex they were assigned at birth.

51. Gender dysphoria is found in the *Diagnostic and Statistical Manual of Mental Disorders Fifth Edition* of the American Psychiatric Association.

52. Based on many scientific studies during the past two decades, gender dysphoria has been identified as resulting from a physiological condition of the brain and neurological system.

53. Scientific studies have shown that transgender persons have brain structures that are typical of non-transgender people with the same gender identity. For example, transgender women (i.e., individuals whose sex assigned at birth is male but who have female gender identity) have brain structures that are similar to those of non-transgender women.

54. Discrimination against transgender people diagnosed with gender dysphoria is based on disability.

55. Ms. Schawe-Lane experienced discrimination based others' perception of her as being disabled because of gender dysphoria.

56. It is appropriate to refer to a transgender woman who has transitioned with female titles, honorifics (e.g., Miss, Ms., or Mrs.), and pronouns (e.g., her, hers, and she).

**Employment with Amazon**

57. On or about October 1, 2014, Ms. Schawe-Lane and Mr. Lane were hired by Amazon as full-time employees.

58. At the time Plaintiffs were hired, Defendant Amazon had a non-discrimination policy that included sex and gender identity as prohibited bases for discrimination.

59. Plaintiffs were initially assigned to work in Amazon's CVG3 warehouse, and continued to work in CVG3 until mid-September 2015.

60. In mid-September 2015, Plaintiffs were reassigned to Amazon's CVG1 warehouse.

61. Plaintiffs worked in CVG1 until October 3, 2015, when they were constructively discharged by Amazon.

62. At all times during her employment with Amazon, Ms. Schawe-Lane was female.

63. At all times during their employment with Amazon, Mr. Lane and Ms. Schawe-Lane held themselves out as husband and wife.

64. Plaintiffs' relationship was known to Amazon management, supervisors, and employees.

65. Upon information and belief, Plaintiffs' coworkers were told Ms. Schawe-Lane is transgender by an Amazon employee who was designated as a "coach."

66. Upon information and belief, the coach was provided with paperwork that disclosed Ms. Schawe-Lane's previous name and sex prior to her gender transition.

67. Upon information and belief, after learning that Ms. Schawe-Lane is transgender, the coach told multiple Amazon employees that Ms. Schawe-Lane is transgender.

68. Upon information and belief, the coach and Plaintiffs' coworkers later disclosed to still other Amazon employees, supervisors, and managers that Ms. Schawe-Lane is transgender.

**Discrimination Against Ms. Schawe-Lane by Amazon**

69. Following the disclosure that Ms. Schawe-Lane is transgender, Ms. Schawe-Lane began experiencing discrimination and harassment by Amazon employees, supervisors, and managers because of sex and/or disability.

70. This severe and escalating discrimination, harassment, and retaliation included but was not limited to:

   a. Being intentionally referred to by male pronouns and titles with the purpose and effect of humiliating Ms. Schawe-Lane;

   b. Sexual harassment;

   c. Disparaging comments and conduct;

   d. Failure to correct her name in employment records and publicly accessible records and displays;

   e. Threats of physical violence and other intimidation by coworkers;

   f. Hostility that impaired her access to the women's restroom;

   g. Heightened work scrutiny;

   h. Improper pay deductions;

   i. Management refusal to redress Ms. Schawe-Lane's complaints of improper pay deductions;

   j. Unfair discipline;

   k. Unfair threats of discipline;

   l. Repeated complaints to supervisors, management, and corporate headquarters that led to no prompt and effective corrective actions;

   m. Retaliation from management;

   n. Hostile work environment; and

8

      o.  Retaliatory hostile work environment.

71. Specifically, Ms. Schawe-Lane endured the following:

      a.  Amazon management, supervisors, and employees directed discriminatory slurs at her, such as "it," "man," "sir," "he/she," "chick with a dick," "shemale," "cross-dresser," "tranny," "prostitute," "tranny prostitute," "gay," "Dane's boyfriend;" and

      b.  Amazon management and Ms. Schawe-Lane's coworkers constantly and intentionally referred to Ms. Schawe-Lane using male pronouns and titles, despite knowing that she is a woman.

72. Ms. Schawe-Lane complained to supervisors, managers, and Human Relations ("HR") personnel about the discrimination described herein on multiple occasions.

73. When Ms. Schawe-Lane complained about the discrimination, she was at times intentionally referred to by male pronouns and titles, with the purpose and effect of humiliating her.

74. Further, Ms. Schawe-Lane endured sexual harassment by a coworker, Mr. Tony Hughett, in the following ways, all of which were unwelcome and objectively and subjectively offensive:

      a.  On multiple occasions in August 2014, Mr. Hughett told Ms. Schawe-Lane that he knew her "secret" and brought her pornography and sex toys;

      b.  On at least one occasion, Mr. Hughett propositioned Mr. Lane for sex in front of Ms. Schawe-Lane;

      c.  On multiple occasions in September 2014, Mr. Hughett looked at Mr. Lane's crotch and visibly licked his lips in a suggestive fashion while Ms. Schawe-Lane was in close proximity to Mr. Hughett;

      d.  On multiple occasions in February 2015, Mr. Hughett asked Ms. Schawe-Lane's coworkers about Ms. Schawe-Lane's genitalia and sexual orientation; and

      e.  On multiple occasions in February 2015, Mr. Hughett asked Ms. Schawe-Lane's coworkers about the sexual orientation of Mr. Lane.

75. Ms. Schawe-Lane reported the incidents with Mr. Hughett to Amazon managers and HR.

76. Upon information and belief, these incidents with Mr. Hughett were never investigated by Amazon and no prompt and effective corrective actions were taken.

77. Ms. Schawe-Lane was threatened with physical violence and intimidated by her Amazon coworkers:

   a. In March or April 2015, Ms. Schawe-Lane was verbally harassed by female coworkers while she was using the women's multi-stall restroom. Ms. Schawe-Lane was in a stall with the door closed. A group of women entered the restroom and one loudly exclaimed "*it*'s in here right now;" another woman responded "maybe we should just drag *it* outside the fucking stall;"

   b. On April 30, 2015, a male coworker of Ms. Schawe-Lane told her either "you're going to get some stares today" or "you're going to get scared" in a menacing manner. Later that day, Ms. Schawe-Lane saw the same man punching and stabbing a box with a large knife while cursing loudly to himself;

   c. Based on the proximity of the man's statement to his violent behavior, Ms. Schawe-Lane felt threatened;

   d. In mid-2015, a male coworker yelled "You should get fucking fired, *faggots*!" while Ms. Schawe-Lane and Mr. Lane walked past him; and

   e. In mid-2015, a male coworker yelled "You should get your ass beat!" while Ms. Schawe-Lane and Mr. Lane walked past him.

78. Ms. Schawe-Lane reported these incidents to Amazon managers and HR.

79. Upon information and belief, these incidents were never investigated by Amazon and no prompt and effective corrective actions were taken.

80. Ms. Schawe-Lane's coworkers constantly gossiped about her sexual anatomy, their perception of her sexual activities, and the intimate details of her relationship with Mr. Lane.

81. Ms. Schawe-Lane's coworkers tried to look into the bathroom stall Ms. Schawe-Lane was using, in what appeared to be an attempt to see her genitalia.

82. Ms. Schawe-Lane's coworkers were openly hostile towards her use of the women's restroom and threatened to petition HR to ban her from the women's restroom entirely.

83. From November 2014 until October 2015, Amazon made improper deductions from Ms. Schawe-Lane's paychecks or improperly recorded her hours, resulting in lower pay.

84. The effect of these improper deductions was that Ms. Schawe-Lane was not paid for hours she worked during that time.

85. HR repeatedly refused to address Ms. Schawe-Lane's complaints about errors in calculating or recording her unpaid time ("UPT"), the hours that an Amazon employee was permitted to take off within a given time period.

86. Ms. Schawe-Lane's UPT was miscalculated in that it did not reflect several excused absences for medical emergencies.

87. Though Ms. Schawe-Lane complained to Amazon about these improper pay deductions, no corrective actions were taken.

88. Although Ms. Schawe-Lane made written requests for reasonable accommodations for her disabilities, HR repeatedly declined to provide her with reasonable accommodations or to participate in the interactive process as required by the ADA.

89. On several occasions, managers and supervisors gave Ms. Schawe-Lane less desirable work assignments than her similarly situated non-transgender coworkers, including but not limited to assignments that required her to lift heavy boxes full of books during entire shifts despite her notice that she had recently suffered injuries to her back and her doctor's note stating that she should avoid lifting heavy objects.

90. On several occasions, managers or HR refused Ms. Schawe-Lane's requests for permission to leave work so that she could go to the emergency room or otherwise seek immediate treatment for a medical emergency.

91. From August 2014 through April 2015, Amazon management failed to display Ms. Schawe-Lane's correct name, and instead openly displayed her previous name from prior to her gender transition, with the purpose and effect of humiliating her.

92. Amazon displayed Ms. Schawe-Lane's previous name in locations visible to her coworkers, such as the assignment board, on her ID badge, and within the computer system that was accessible by her coworkers, supervisors, and managers.

93. HR repeatedly refused to correct Ms. Schawe-Lane's name in her personnel records and with Amazon's health benefits administrator despite her repeated requests over several months.

94. These intentional and repeated acts had the purpose and effect of discriminating against Ms. Schawe-Lane based on sex.

95. This discrimination occurred because Ms. Schawe-Lane was female but Defendant Amazon regarded her as male.

96. Ms. Schawe-Lane filed dozens of written complaints with HR, made complaints via telephone to Amazon's corporate hotline, and made dozens of oral complaints to supervisors, managers, and HR to no avail regarding the intentional and repeated use of her prior name and sex to demean her.

97. Despite the dozens of complaints that Ms. Schawe-Lane made concerning the harassment, disparate treatment, and retaliation she experienced at Amazon, throughout her employment, the bias and hostility permeated the work environment.

98. Amazon did not take prompt and effective action to stop this bias and hostility.


**First Set of Administrative Charges Filed with the U.S. Equal Employment Opportunity Commission**

99. On or about August 21, Ms. Schawe-Lane filed an administrative charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination because of sex, disability, retaliation, hostile work environment, and retaliatory hostile work environment.

100.    Mr. Dane Lane also filed with the EEOC on the same date, alleging the same charges.

101.    Upon information and belief, Amazon became aware of these charges shortly thereafter.

**Severing of Plaintiffs' Automobile Brake Line While in Amazon's Secured Parking Lot**

102.    In late August 2015, someone severed the brake lines on Ms. Schawe-Lane and Mr.

Lane's car while it was in Amazon's secured parking lot outside CVG3.

      a.    Severing the brake lines of a car impairs or eliminates a car's ability to decrease

in speed or stop.

      b.    A car that is not able to decrease in speed or stop is a danger to the driver and

passengers in the car as well as to other people and property in or near the

roadway on which the car is driving.

103.    Ms. Schawe-Lane learned that the brake lines were severed when she was leaving work

with Mr. Lane, who was driving the car.

104.    Mr. Lane experienced problems with the brakes while driving, and had a mechanic

inspect the car.

105.    The mechanic confirmed that someone had tampered with the car and the brake lines

were severed.

106.    Ms. Schawe-Lane immediately reported the severed brake lines to Amazon management

in person and via its ethics hotline and other hotlines, and to the Boone County Sheriff.

107.    Upon information and belief, Amazon did not fully investigate the severed brake lines

incident and failed to identify the perpetrator(s).

108.    As a result of this incident, Plaintiffs' fear for their physical safety, and the resulting

anxiety and trauma they experienced, increased significantly.

109.    In mid-September 2015, as a result of the severed brake lines incident, Amazon agreed

that Ms. Schawe-Lane and Mr. Lane should be put on paid administrative leave and

transferred from CVG3 to CVG1.


**Continued Discrimination in CVG1**

110.    The discrimination and harassment that Plaintiffs had experienced at CVG3 continued at

CVG1.

111.   At CVG1, in response to Ms. Schawe-Lane's and Mr. Lane's complaints, Amazon management retaliated against them by imposing special rules on Ms. Schawe-Lane and Mr. Lane that were not applied to other employees.

112.   These retaliatory rules included restricting their ability to report discrimination via written notices, among other restrictions.

113.   On or about September 15, 2015, Amazon management gave a memo to Ms. Schawe Lane and Mr. Lane requiring them to report all discrimination to Amazon's Human Relations department ("HR") the same day it occurred.

114.   The memo Amazon management gave to Ms. Schawe-Lane and Mr. Lane advised that if discrimination was not reported to HR the same day it occurred, Ms. Schawe-Lane and Mr. Lane could be terminated.

115.   Because HR personnel were often not working during Ms. Schawe-Lane and Mr. Lane's shifts, it was very difficult for Plaintiffs to comply with Amazon management's special rules regarding discrimination reporting.

116.   Throughout September 2015, Ms. Schawe-Lane continued to experience harassment, discrimination from managers and coworkers, and retaliation by managers.

117.   Managers at Amazon subjected Ms. Schawe-Lane to heightened scrutiny, and assigned her less desirable assignments than other workers of equivalent skill and experience.

118.   Ms. Schawe Lane and Mr. Lane were repeatedly singled out by managers for "coaching," even though their work completion rates matched those of their coworkers.

119.   On several occasions in September 2015, Ms. Schawe-Lane and Mr. Lane's supervisors and other managers told them that they were being watched "closely."

120.   A manager told Ms. Schawe-Lane that even her bathroom visits were being watched.

121.   As a result of the announced surveillance of Ms. Schawe-Lane's activities by her supervisors and managers, Ms. Schawe-Lane became so afraid to use the restroom that she avoided using it, which resulted in severe bladder and kidney infections that required emergency medical treatment.

14

122. Further, Amazon management retaliated against them by imposing special rules for requesting reprieves from mandatory overtime on Plaintiffs that differed from those followed by their coworkers.

123. The retaliatory mandatory overtime rules made it exceedingly difficult to navigate getting time off for necessary medical care and personal matters.

124. Throughout her time at CVG1, Ms. Schawe-Lane complained about the discrimination, harassment, and retaliation she experienced to Defendant Amazon in person and in writing.

125. Ms. Schawe-Lane made these complaints to supervisors, managers, and HR personnel.

126. Upon information and belief, Amazon did not take the necessary steps to investigate these complaints.

127. During Ms. Schawe-Lane's tenure with Amazon, no transgender-specific non-discrimination training was conducted for her coworkers or managers.

128. Amazon took no prompt and effective action to address the situation.

**Constructive Discharge of Ms. Schawe-Lane by Amazon**

129. In early October 2015, the stress of the ongoing discrimination Ms. Schawe-Lane was experiencing and the retaliatory work rules applied to her took such a toll on her mental and physical health that she submitted her notice to Amazon resigning her position.

130. Ms. Schawe-Lane informed Amazon that, because the ongoing discriminatory and retaliatory conditions in CVG1 had not been addressed, she found the conditions so intolerable that she had no choice but to resign.

131. As a result of the discrimination she experienced, Ms. Schawe-Lane suffered serious health consequences, including ADA-covered disabilities.

132. As a result of the discrimination she experienced, Ms. Schawe-Lane sought immediate medical treatment and was hospitalized several times in 2015.

133. Ms. Schawe-Lane received treatment the same day she resigned from Amazon for illnesses caused by the discrimination she experienced there.

134.   Ms. Schawe-Lane suffered numerous physical and mental health problems due to the discrimination by Amazon employees, supervisors, and managers.

135.   These problems include but are not limited to anxiety, depression, and posttraumatic stress disorder, none of which Ms. Schawe-Lane suffered prior to the discrimination; physical manifestations of extreme stress, including severe hair loss, and the onset or exacerbation of multiple illnesses.

136.   Prior to the discrimination she experienced at Amazon, Ms. Schawe-Lane was in good health.


**Discrimination Against Mr. Lane by Amazon**

137.   Following the disclosure that Ms. Schawe-Lane is transgender to Plaintiffs' coworkers, Mr. Lane began experiencing discrimination by Amazon employees, supervisors, and managers because of his association with Ms. Schawe-Lane, who was known to Amazon as Mr. Lane's wife.

138.   Amazon employees, supervisors, and managers harassed Mr. Lane because of their erroneous and bigoted beliefs regarding Mr. Lane's conformity with sex and gender stereotypes and his association with Ms. Schawe-Lane.

139.   Mr. Lane also experienced discrimination because of disability.

140.   Mr. Lane experienced discrimination, harassment, and retaliation, including but not limited to:

  a.  Sexual harassment;

  b.  Disparaging comments from coworkers;

  c.  Improper pay deductions;

  d.  Management refusal to redress complaints of improper pay deductions;

  e.  Repeated complaints to supervisors, management, and corporate headquarters that led to no prompt and effective corrective actions;

  f.  Retaliation from management;

16

    g.  Heightened scrutiny;

    h.  Denial of a request for short-term medical leave;

    i.  Hostile work environment; and

    j.  Retaliatory hostile work environment.

141.    Beginning shortly after one of Mr. Lane's coworkers, Tony Hughett, learned that Ms. Schawe-Lane is transgender in August 2014, Mr. Hughett began sexually harassing Mr. Lane in the following ways, all of which were unwelcome and objectively and subjectively offensive:

    a.  Mr. Hughett sexually touched Mr. Lane;

    b.  Mr. Hughett gyrated his crotch against Mr. Lane's buttocks;

    c.  Mr. Hughett propositioned Mr. Lane for sex;

    d.  Mr. Hughett brought Mr. Lane gifts, and when Mr. Lane refused to accept them, Mr. Hughett told Mr. Lane's coworkers that Mr. Lane had in fact specifically requested the gifts, and pressured Ms. Schawe-Lane to make Mr. Lane accept the gifts from him Mr. Hughett;

    e.  Mr. Hughett presented Mr. Lane with pornography and sex toys;

    f.  Mr. Hughett followed Mr. Lane around at work, including into the men's restroom;

    g.  When Mr. Lane was stationed in a different area from Mr. Hughett, Mr. Hughett would travel to Mr. Lane's work area and look at Mr. Lane in sexually suggestive ways;

    h.  Mr. Hughett openly ogled Mr. Lane's crotch and licked his lips in a suggestive fashion while doing so;

    i.  Mr. Hughett told Mr. Lane's coworkers that Ms. Schawe-Lane was formerly a prostitute and that is how Mr. Lane met her;

      j.   Upon information and belief, Mr. Hughett told his coworkers that Mr. Lane had filed a sexual harassment lawsuit against Mr. Hughett, in an attempt to spur Mr. Lane's coworkers to harass Mr. Lane; and

      k.   Mr. Hughett continued to sexually harass Mr. Lane even though Mr. Lane told Mr. Hughett that he (Mr. Lane) did not want to have a sexual relationship with Mr. Hughett.

142. Mr. Lane reported Mr. Hughett's behavior to Amazon.

143. Upon information and belief, despite Mr. Lane's repeated complaints to Defendant Amazon about Mr. Hughett's sexual harassment of Mr. Lane, no investigations were conducted and no prompt and effective corrective actions were taken.

144. Because of the harassment he experienced, Mr. Lane requested that Defendant Amazon permit him to work in a different area than Mr. Hughett, but Defendant Amazon did not grant Mr. Lane's request and claimed internal procedures prevented them from doing so.

145. Mr. Lane was also harassed by another coworker, Christian Stoahl.

146. Mr. Stoahl sexually harassed Mr. Lane in the following ways, all of which were unwelcome and objectively and subjectively offensive:

      a.   During late June or early July 2015, Mr. Stoahl initiated multiple sexually suggestive conversations with Mr. Lane;

      b.   Mr. Stoahl gave Mr. Lane his (Mr. Stoahl's) home address and told Mr. Lane to come over so he (Mr. Stoahl) could give Mr. Lane a massage and "fix all [Mr. Lane's] problems;" and

      c.   On one occasion, Mr. Stoahl touched Mr. Lane's back when Mr. Lane was trying to extricate himself from a sexually suggestive conversation with Mr. Stoahl.

147. Mr. Lane reported Mr. Stoahl's behavior to Amazon.

148. Upon information and belief, despite Mr. Lane's complaints to Defendant Amazon about Mr. Stoahl's harassment of Mr. Lane, no investigations were conducted and no prompt and effective corrective actions were taken.

**Amazon's Failure to Provide Reasonable Accommodations**

149.   In early 2015, Plaintiffs' supervisors and managers informed them that they were no longer permitted to take breaks at the same time as each other, despite previously permitting them to take their breaks together.

150.   Plaintiffs explained to their supervisors and managers that, because of the previous discrimination, harassment, and resulting anxiety they had experienced, they did not feel safe taking their breaks alone.

151.   They also pointed out to their supervisors and managers that other married and unmarried couples were permitted to take breaks together.

152.   Because Amazon required them to, Mr. Lane and Ms. Schawe-Lane provided Amazon supervisors and managers with doctors' notes explaining that it was necessary for them to take breaks together to accommodate Ms. Schawe-Lane's disabilities.

153.   Despite Mr. Lane's and Ms. Schawe-Lane's compliance with Amazon's retaliatory requirements for doctors' notes, Amazon management ignored their requests for reasonable accommodations.

154.   In June 2015, Amazon assigned Mr. Lane and Ms. Schawe-Lane to work in different areas of the building, which made it impossible for them to take breaks together.

155.   Further, Mr. Lane was denied a request for medical leave as described below:

   a.   In February 2015, Mr. Lane began to experience physical manifestations of extreme stress.

   b.   Because of this, Mr. Lane took steps to secure paid disability from Defendant Amazon, as he was entitled to as a full-time employee, by submitting documentation of his disability and requesting time off.

   c.   HR did not process his request but instead claimed they lost his paperwork and requested that he resubmit the request multiple times.

   d.   Mr. Lane resubmitted his paperwork three or four times to HR.

   e.   A few weeks later, HR denied his request.

19

156.    Mr. Lane reported this discrimination to Amazon.

157.    Upon information and belief, Mr. Lane's complaint received was never investigated, and no prompt and effective corrective actions were taken.


**Heightened Scrutiny of Work**

158.    In early February 2015, a manager wrote Mr. Lane up for an infraction he did not commit, despite Defendant Amazon's progressive discipline policy that required that the manager give Mr. Lane a "coaching" (a lesser form of discipline than a write-up).

159.    Mr. Lane declined to sign the write-up, after which the manager forcibly touched Mr. Lane, grabbed Mr. Lane's ID card and used it against Mr. Lane's will to electronically sign the write-up.

160.    Mr. Lane reported this incident to Amazon.

161.    Upon information and belief, Defendant Amazon never investigated it and no prompt and effective corrective actions were taken.

162.    The day after the write-up incident, the same manager assigned Mr. Lane to a job in the receiving department, which was a less-desirable job than his previous assignments. The manager kept Mr. Lane assigned to the department for two months.

163.    The less-desirable job was known to be assigned to new hires or as form of punishment.

164.    During the time Mr. Lane was assigned to this job, the same manager watched him closely, let Mr. Lane know that he (the manager) watched Mr. Lane closely, and routinely followed Mr. Lane to the restroom.

165.    Mr. Lane reported this to Amazon.

166.    Upon information and belief, Mr. Lane's complaint was never investigated by Amazon and no corrective actions were taken.

167.    When the manager stopped working in the same building as Mr. Lane in March 2015, Mr. Lane was finally reassigned to a more desirable job.

168.    On or about March 26, 2015, a different manager who did not work in Mr. Lane's department came over to Mr. Lane's workstation, scrutinized his work, identified a minor error and took a picture of his workstation.

169.    The manager told Mr. Lane that she would send the picture to Mr. Lane's direct supervisor and advise that Mr. Lane be given a write-up.

170.    Later that day, Mr. Lane's direct supervisor told Mr. Lane that she had received the picture and advised the manager to give Mr. Lane a write-up.

171.    Upon information and belief, managers did not discipline similarly situated employees who worked in departments other than their (the managers') own.

172.    Upon information and belief, write-ups were not given to similarly situated employees for substantially equivalent minor errors.

173.    In June 2015, Mr. Lane and Ms. Schawe-Lane were told by one of their supervisors that she (the supervisor) had been instructed to watch them closely for all possible offenses and to write them up immediately if she identified any, including very minor offenses, such as taking breaks together or not meeting their productivity goals.

174.    Upon information and belief, the supervisor was not instructed to write up similarly situated employees for substantially equivalent minor offenses.

175.    During this time, Mr. Lane and Ms. Schawe-Lane noticed that the person who had instructed the supervisor to discipline them was also watching them more closely than usual, and spending more time in their work areas so that he could surveil them.

176.    On August 13, 2015, a Human Relations ("HR") staffer told Mr. Lane and Ms. Schawe-Lane that they were being closely watched by Amazon management.

177.    The HR staffer told them that they were not supposed to leave the facility for any reason, even in the case of a medical emergency, without first consulting with the HR staffer or management.

178.    Mr. Lane is not aware of any other Amazon employees who were similarly "counseled."

179.    As set forth above, on or about August 21, Mr. Dane Lane filed an administrative charge

with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging

discrimination because of sex, disability, retaliation, hostile work environment, and

retaliatory hostile work environment, as did his wife, and upon information and belief,

Amazon was notified of these charges shortly thereafter.

**Constructive Discharge of Mr. Lane by Amazon**

180.    In early October 2015, the stress of the ongoing discrimination Mr. Lane was

experiencing and the retaliatory work rules applied to him took such a toll on his mental and

physical health that he submitted his notice to Amazon resigning his position.

181.    Mr. Lane informed Amazon that, because the ongoing discriminatory and retaliatory

conditions at CVG1 had not been addressed, he found the conditions so intolerable that he

had no choice but to resign.

182.    As a result of the discrimination he experienced by Amazon employees, supervisors, and

managers, Mr. Lane suffered serious health consequences, including ADA-covered

disabilities.

183.    As a result of the discrimination he experienced, Mr. Lane sought immediate medical

treatment and was hospitalized several times in 2015.

184.    Mr. Lane received treatment the same day he resigned from Amazon for illnesses caused

by the discrimination he experienced there.

185.    Mr. Lane suffered numerous physical and mental health problems due to the

discrimination he was subjected to by Amazon employees, supervisors, and managers.

186.    These problems include but are not limited to anxiety, depression, and posttraumatic

stress disorder, none of which Mr. Lane suffered prior to the discrimination; physical

manifestations of extreme stress, including significant weight loss, severe gastrointestinal

distress, engaging in nervous behaviors such as compulsive nail biting and compulsive

tearing out of body and head hair (trichotillomania), loss of appetite, withdrawing from social situations, and difficulty communicating with family members and friends.

187.    Prior to the discrimination he experienced at Amazon, Mr. Lane was in good health.


## CAUSES OF ACTION

### COUNT 1
### 42 U.S.C. § 2000e, et seq.
### Hostile Work Environment Because of Sex
### Ms. Allegra Schawe-Lane

188.    Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

189.    Ms. Allegra Schawe-Lane is a member of a protected category with regard to sex.

190.    Ms. Schawe-Lane is and was qualified to perform the job for which she was employed by Defendant.

191.    After Ms. Schawe-Lane's transgender status was disclosed to her coworkers, supervisors, and managers, Defendant Amazon's managers and employees instituted a campaign of harassment and discrimination on the basis of sex and sex stereotyping, including gender, gender expression, gender identity, and gender transition, and adopted adversarial attitudes and hostile demeanors. This harassment was frequent, severe and pervasive, physically threatening, and continued until Ms. Schawe-Lane's constructive discharge by Defendant Amazon.

192.    Ms. Schawe-Lane was targeted for harassment and subjected to a hostile work environment by managers and employees because of her sex and sex stereotyping, including gender, gender identity, gender expression, and gender transition.

193.    The discriminatory acts involved the same type of employment actions, occurred frequently, were perpetuated and/or directed by the same core group of managers and employees, were egregious, numerous and concentrated, and formed part of the same hostile work environment, as detailed herein.

194.   The discriminatory acts were unwelcome to Ms. Schawe-Lane.

195.   Discriminatory intimidation, ridicule, and insult permeated the work environment, and was sufficiently severe or pervasive to alter the conditions of Ms. Schawe-Lane's employment and to create an abusive working environment, as detailed herein.

196.   Defendant Amazon's managers and employees made statements that demeaned Ms. Schawe-Lane's sex, gender, gender identity, gender expression, and gender transition, as detailed herein.

197.   Defendants' managers denied the legitimacy of Ms. Schawe-Lane's female gender identity and feminine gender expression, and encouraged and/or failed to stop others under their direction from doing the same.

198.   This hostile environment unreasonably interfered with Ms. Schawe-Lane's ability to perform her job duties, by disrupting her relationship to Defendant Amazon and its management, by the unreasonable criticism and scrutiny of Ms. Schawe-Lane's gender which flowed directly from Defendant Amazon's failure to take prompt and effective action to stop the hostile work environment, by Ms. Schawe-Lane's need to spend many hours on otherwise unnecessary grievance processes and other means of seeking relief, and her reasonable fear for her safety, amongst other reasons, and created working conditions intolerable to a reasonable person, constituting constructive discharge.

199.   The effects of the hostile environment alleged herein were felt by Ms. Schawe-Lane daily. For instance, Ms. Schawe-Lane felt humiliation and despair as a result of her reasonable fear of continued harassment at any moment, her being referred to continually and intentionally by the wrong name and wrong gender references, her unreasonably not being allowed to take breaks with her husband Dane that would have allowed her to feel some safety from continued harassment, and the hostility she encountered when using restrooms appropriate to her gender while at work, as well as her need to refrain from using such restrooms to avoid the hostility.

200.   The hostile environment was severe, including sexual propositions and threats of bodily harm, reasonably invoking fear of physical confrontations, and included the severing, while parked in Defendant's secure parking lot, of the brake line of an automobile in which Ms. Schawe-Lane was later riding, putting her in physical danger of death or disability.

201.   Many events contributing to this hostile work environment occurred within the 300-day period prior to Ms. Schawe-Lane's first EEOC charge.

202.   Ms. Schawe-Lane perceived the working environment to be abusive or hostile.

203.   A reasonable woman in Ms. Schawe-Lane's circumstances would consider the working environment to be abusive or hostile.

204.   Defendant Amazon's actions occurred because of Ms. Schawe-Lane's sex, in that she was female, but Defendant Amazon regarded her as male.

205.   She would not have been the object of harassment but for her gender.

206.   Defendant Amazon was on notice of the hostile work environment, including actual notice by means of complaints made by Ms. Schawe-Lane and Mr. Dane Lane to Defendant as detailed herein, by means of Ms. Schawe-Lane's and Mr. Dane Lane's EEOC charge filed during their employment, and vicariously and constructively by means of the acts perpetrated by Ms. Schawe-Lane's direct supervisors and managers, as detailed herein.

207.   Defendant Amazon did not undertake prompt and effective efforts sufficient to stop the hostile environment detailed herein.

208.   As a direct and proximate result of Defendant Amazon's unlawful discrimination, Ms. Schawe-Lane incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, and other pecuniary and non-pecuniary losses, which damages would not have occurred but for Amazon's unlawful hostile work environment.

**COUNT 2**
**42 U.S.C. § 2000e, et seq.**
**Retaliation**
**Ms. Allegra Schawe-Lane**

209.   Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

210.    The effect of Defendant Amazon's acts complained of above was to deprive Ms. Schawe-Lane of equal employment opportunities as an employee because of retaliation for her complaints of discrimination in violation of Title VII and Title I of the Civil Rights Act of 1991.

211.   By complaining to Defendant Amazon and Defendant Amazon's managers about the discriminatory practices and hostile work environment described herein, opposing said practices and hostile work environment directed at herself and Mr. Dane Lane, filing administrative charges with the EEOC during her employment, and undertaking activities supporting administrative charges filed with the EEOC by Mr. Dane Lane, Ms. Schawe-Lane engaged in activities protected by Title VII.

212.   Ms. Schawe-Lane's exercise of protected rights was known to Defendant Amazon, because the complaints were made to Defendant Amazon, and by means of the administrative charges by her and her husband filed with the EEOC during her employment.

213.   Following and because of Ms. Schawe-Lane's Title VII protected conduct, Ms. Schawe-Lane was threatened with and subjected to tangible or adverse employment actions, including but not limited to the imposition of retaliatory rules such as prohibiting her from putting complaints in writing and taking breaks with her husband, improper deductions from her unpaid time balance, withholding of appropriate wages, failure to pay appropriate overtime wages, and constructive discharge.

214.   The actions taken against Ms. Schawe-Lane would dissuade a reasonable employee from making or supporting a complaint of discrimination.

215.    By engaging in the conduct described above, Defendant Amazon intentionally retaliated against Ms. Schawe-Lane with malice or reckless indifference to Ms. Schawe-Lane's federally protected rights to oppose practices that are prohibited by Title VII.

216.    As a direct and proximate result of Defendant Amazon's unlawful retaliation, Ms. Schawe-Lane has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 3**
**42 U.S.C. § 2000e, et seq.**
**Constructive Discharge**
**Ms. Allegra Schawe-Lane**

217.    Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

218.    Defendant Amazon deliberately created working conditions that a reasonable person would perceive to be intolerable based on Ms. Schawe-Lane's sex, sex stereotyping, gender, gender expression, gender identity and/or gender transition.

219.    These conditions included, but were not limited to, harassment, humiliation, retaliation and retaliatory rules calculated to encourage Ms. Schawe-Lane's resignation as described herein.

220.    Ms. Schawe-Lane perceived the working conditions that Defendant Amazon created to be intolerable.

221.    Defendant Amazon created these intolerable working conditions with the intention of forcing Ms. Schawe-Lane to resign her position.

222.    Because of the intolerable working conditions Defendant Amazon created, Ms. Schawe-Lane resigned her position with Amazon.

223.    As a direct and proximate result of Defendant Amazon's constructive discharge, Ms. Schawe-Lane has incurred damages including but not limited to lost wages, humiliation, loss

of enjoyment of life, emotional distress, damage to her professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 4**
**Americans with Disabilities Act**
**42 U.S.C. § 12101, et seq.**
**Failure to Provide Reasonable Accommodations**
**Ms. Allegra Schawe-Lane**

224.    Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

225.    Defendant Amazon failed to provide Ms. Schawe-Lane with reasonable accommodations as required by the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq.

226.    Throughout the relevant period, Ms. Schawe-Lane had a disability or was regarded as having a disability by Defendant Amazon.

227.    With or without reasonable accommodations, Ms. Schawe-Lane was qualified for the job with Defendant Amazon.

228.    Despite numerous requests over the course of Ms. Schawe-Lane's employment with Defendant Amazon, Defendant Amazon failed to provide reasonable accommodations to Ms. Schawe-Lane.

229.    As a direct and proximate result of Defendant Amazon's failure to provide reasonable accommodations, Ms. Schawe-Lane incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, and pecuniary and non-pecuniary losses.

## COUNT 5
### Americans with Disabilities Act
### 42 U.S.C. § 12101, et seq.
### Hostile Work Environment
### Ms. Allegra Schawe-Lane

230.    Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187 as if fully set forth

herein.

231.    The workplace environment at Amazon was permeated with discriminatory intimidation,

ridicule and insult that was sufficiently severe and pervasive as to alter the conditions of the

Ms. Schawe-Lane's employment and create an abusive working environment.

232.    The discrimination that Ms. Schawe-Lane experienced was due to her being disabled or

Defendant Amazon's perception of her as disabled.

233.    Defendant Amazon did not undertake prompt and effective efforts sufficient to stop the

hostile environment detailed herein.

234.    As a direct and proximate result of Defendant Amazon's unlawful discrimination, Ms.

Schawe-Lane incurred damages including but not limited to lost wages, humiliation, loss of

enjoyment of life, emotional distress, damage to her professional reputation, and pecuniary

and non-pecuniary losses.

## COUNT 6
### Americans with Disabilities Act
### 42 U.S.C. § 12101, et seq.
### Retaliation
### Ms. Allegra Schawe-Lane

235.    Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187 as if fully set forth

herein.

236.    Ms. Schawe-Lane was qualified to perform her job.

237.    Ms. Schawe-Lane complained of disability discrimination to Defendant Amazon on

multiple dates as described above.

238.    Because of Ms. Schawe-Lane's complaints, Defendant Amazon subjected Ms. Schawe-Lane to retaliatory rules and heightened scrutiny as terms and conditions of her employment.

239.    These retaliatory rules and heightened scrutiny were in retaliation for Ms. Schawe-Lane's complaints of discrimination that she reasonably believed was in violation of the ADA.

240.    But for Defendant Amazon's unlawful retaliation, Ms. Schawe-Lane would not have been constructively discharged, and thereby she incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 7**
**Fair Labor Standards Act**
**29 U.S.C. § 201, et seq.**
**Ms. Allegra Schawe-Lane**

241.    Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

242.    Plaintiff Ms. Schawe-Lane was employed by Defendant Amazon during the relevant period.

243.    Defendant Amazon was an enterprise engaged in interstate commerce during the relevant period.

244.    Defendant Amazon intentionally failed to pay Ms. Schawe-Lane for each hour she worked during the period of November 2014 until October 2015.

245.    In the alternative, Defendant Amazon intentionally failed to pay overtime compensation for each hour she worked in excess of forty hours per week during the period of November 2014 until October 2015.

246.    Ms. Schawe-Lane notified Amazon many times about these failures.

247.    Despite multiple notifications, Amazon failed to pay Ms. Schawe-Lane intentionally and in bad faith.

248.    In retaliation for the complaints, Amazon withheld wages from Plaintiff.

249.    As a direct and proximate result of Defendant Amazon's violation of the law, Ms. Schawe-Lane has incurred damages including but not limited to lost wages and other pecuniary and non-pecuniary losses.


**COUNT 8**
**Kentucky Civil Rights Act**
**KRS § 344, et seq.**
**Hostile Work Environment Because of Sex**
**Ms. Allegra Schawe-Lane**

250.    Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187, paragraphs 188-208 (Count 1) and paragraphs 217-223 (Count 3) as if fully set forth herein.

251.    Ms. Schawe-Lane was subjected to a hostile work environment by Defendant Amazon.

252.    This hostile work environment was because of Ms. Schawe-Lane's sex and sex stereotyping, as described above.

253.    As a direct and proximate result of Defendant Amazon's unlawful sex discrimination, Ms. Schawe-Lane incurred damages, including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, personal indignity, other intangible injuries, and other pecuniary and non-pecuniary losses.


**COUNT 9**
**Kentucky Civil Rights Act**
**KRS § 344, et seq.**
**Retaliation**
**Ms. Allegra Schawe-Lane**

254.    Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187, paragraphs 209-216 (Count 2) and paragraphs 217-223 (Count 3) as if fully set forth herein.

255.    Ms. Schawe-Lane was engaged in protected activities as defined by the Kentucky Civil Rights Act, KRS § 344, et seq.

256.    She was disadvantaged by acts of her employer because of the said protected activities.

257.    As a direct and proximate result of Defendant Amazon's unlawful retaliation, Ms.

Schawe-Lane incurred damages, including but not limited to lost wages, humiliation, loss of

enjoyment of life, emotional distress, damage to her professional reputation, personal

indignity, other intangible injuries, and other pecuniary and non-pecuniary losses.

## COUNT 10
### Kentucky Wages and Hours Act
### KRS § 377, et seq.
### Unlawful Withholding of Wages and
### Time and a Half for Employment in Excess of Forty Hours
### Ms. Allegra Schawe-Lane

258.    Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187 as if fully set forth

herein.

259.    Plaintiff Ms. Schawe-Lane was employed by Defendant Amazon during the relevant

period.

260.    Defendant Amazon was an enterprise engaged in interstate commerce during the relevant

period.

261.    Defendant Amazon unlawfully withheld wages from Ms. Schawe-Lane during the period

of November 2014 until October 2015.

262.    In the alternative, Defendant Amazon failed to pay time and a half compensation for each

hour Ms. Schawe-Lane worked in excess of forty hours per week during the period of

November 2014 until October 2015.

263.    Ms. Schawe-Lane notified Amazon many times about these failures.

264.    Amazon failed to pay Ms. Schawe-Lane intentionally and in bad faith.

265.    As a direct and proximate result of Defendant Amazon's violation of the law, Ms.

Schawe-Lane has incurred damages including but not limited to lost wages and other

pecuniary and non-pecuniary losses.

## COUNT 11
## Premises Liability
## Ms. Allegra Schawe-Lane

266.    Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

267.    Ms. Schawe-Lane was on Defendant Amazon's property because of her status as an employee of Amazon.

268.    Amazon owed Ms. Schawe-Lane a duty of care, and that duty extended to the care of Ms. Schawe-Lane and Mr. Lane's car, which was parked on a parking lot made available by Amazon to Amazon employees.

269.    Amazon advertised to its employees that the said parking lot was secure.

270.    Amazon employed security personnel and procedures to ensure the security of the said parking lot.

271.    Amazon failed to employ sufficient security personnel and procedures to ensure the security of the said parking lot.

272.    Injury and damage to Ms. Schawe-Lane's car and to Ms. Schawe-Lane was a reasonably foreseeable result of Amazon's failure to employ sufficient security personnel and procedures to ensure the security of the said parking lot.

273.    By permitting an individual to sever the brake lines of Ms. Schawe-Lane and Mr. Lane's car, Amazon breached its duty of care to Ms. Schawe-Lane.

274.    Because of Amazon's breach of its duty of care, Ms. Schawe-Lane and Mr. Lane's car was damaged, and Ms. Schawe-Lane was put at risk of injury or death.

275.    As a direct and proximate result of Defendant Amazon's breach of its duty of care to Ms. Schawe-Lane, she has incurred damages including but not limited to property damage, lost wages, loss of enjoyment of life, emotional distress, and other pecuniary and non-pecuniary losses.

**COUNT 12**
**Breach of Contract**
**Ms. Allegra Schawe-Lane**

276.    Plaintiff Ms. Schawe-Lane incorporates by reference paragraphs 1-187 as if fully set forth

herein.

277.    Defendant Amazon offered to engage Ms. Schawe-Lane as an employee at Amazon, and

Ms. Schawe-Lane accepted the offer.

278.    When Ms. Schawe-Lane began her employment, Defendant Amazon had a non-

discrimination policy, which contained representations as to benefits to be extended to

Plaintiff Ms. Schawe-Lane, including that Defendant Amazon prohibited discrimination

based on sex and gender identity, stating in part that "Amazon is an equal opportunity

affirmative action employer, and … discrimination or harassment against any employee …

on the basis of … sex … [or] gender identity … will not be tolerated."

279.    Defendant Amazon adopted this non-discrimination policy prior to Plaintiff Ms. Schawe-

Lane's commencement of employment with Amazon.

280.    Defendant Amazon's non-discrimination policy became a binding contract once Ms.

Schawe-Lane accepted it and continued to work despite not being required to do so.

281.    Defendant Amazon breached its contract with Ms. Schawe-Lane when it discriminated

against her on the basis of her gender identity.

282.    Because of Defendant Amazon's breach, Ms. Schawe-Lane suffered damages, including

but not limited to lost income, humiliation, loss of enjoyment of life, emotional distress,

damage to her professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 13**
**42 U.S.C. § 2000e, et seq.**
**Hostile Work Environment Because of Sex**
**Mr. Dane Lane**

283.    Plaintiff Mr. Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

284.    After Ms. Schawe-Lane's transgender status was disclosed to her coworkers, supervisors, and managers, Defendant Amazon's managers and employees instituted a campaign of harassment and bullying against Mr. Lane on the basis of sex and his association with a person in a protected category, i.e., his wife, Allegra Schawe-Lane, and adopted adversarial attitudes and hostile demeanors towards him. This harassment was frequent, severe and pervasive, physically threatening, and continued until Mr. Lane's constructive discharge by Defendant Amazon.

285.    Mr. Lane was targeted for harassment and subjected to a hostile work environment by managers and employees because of his sex and his association with Ms. Schawe-Lane.

286.    The discriminatory acts involved the same type of employment actions, occurred frequently, were perpetuated and/or directed by the same core group of managers and employees, were egregious, numerous and concentrated, and formed part of the same hostile work environment, as detailed herein.

287.    Discriminatory intimidation, ridicule, and insult permeated the work environment, and was sufficiently severe or pervasive to alter the conditions of Mr. Lane's employment and to create an abusive working environment, as detailed herein.

288.    Defendant Amazon's managers and employees made statements that demeaned Mr. Lane on the basis of sex and his association with Ms. Schawe-Lane, as detailed herein.

289.    This hostile environment unreasonably interfered with Mr. Lane's ability to perform his job duties, by the disruption of his relationship to Defendant Amazon and its management, by the unreasonable criticism and scrutiny of Mr. Lane's gender which flowed directly from Defendant Amazon's failure to take prompt and effective action to stop the hostile work environment, by Mr. Lane's need to spend many hours on otherwise unnecessary grievance processes and other means of seeking relief, and his reasonable fear for his safety, amongst other reasons, and created working conditions intolerable to a reasonable person, constituting constructive discharge.

290.    The effects of the hostile environment alleged herein were felt by Mr. Lane daily.

291.    Many events contributing to this hostile work environment occurred within the 300-day period prior to Mr. Lane's first charge EEOC charge, including but not limited to the severe and pervasive sexual harassment he was subjected to.

292.    Mr. Lane perceived the working environment to be abusive or hostile.

293.    A reasonable person in Mr. Lane's circumstances would consider the working environment to be abusive or hostile.

294.    Defendant Amazon was on notice of the hostile work environment, including actual notice by means of complaints made by Mr. Lane and Ms. Schawe-Lane to Defendant as detailed herein, by means of Mr. Lane's and Ms. Schawe-Lane's EEOC charge filed during their employment, and vicariously and constructively by means of the acts perpetrated by Mr. Lane's direct supervisors and managers, as detailed herein.

295.    Defendant Amazon did not undertake prompt and effective efforts to stop the hostile environment detailed herein.

296.    As a direct and proximate result of Defendant Amazon's unlawful discrimination, Mr. Lane incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to his professional reputation, and other pecuniary and non-pecuniary losses, which damages would not have occurred but for Amazon's unlawful hostile work environment.

**COUNT 14**
**42 U.S.C. § 2000e, et seq.**
**Retaliation**
**Mr. Dane Lane**

297.    Plaintiff Mr. Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

298.    The effect of Defendant Amazon's acts complained of above has been to deprive Mr. Lane of equal employment opportunities as an employee because of retaliation for his complaints of discrimination in violation of Title VII.

299.    By complaining to Defendant Amazon and Defendant Amazon's managers about the discriminatory practices and hostile work environment described herein, opposing said practices and hostile work environment directed at himself and Ms. Schawe-Lane, filing administrative charges with the EEOC during his employment, and undertaking activities supporting administrative charges filed with the EEOC by Ms. Schawe-Lane, Mr. Lane engaged in activities protected by Title VII.

300.    Mr. Lane's exercise of protected rights was known to Defendant Amazon, because the complaints were made to Defendant Amazon, and by means of the administrative charges by him and his wife filed with the EEOC during his employment.

301.    Following and because of Mr. Lane's Title VII protected conduct, Mr. Lane was threatened with and subjected to tangible or adverse employment actions, including but not limited to the imposition of retaliatory rules such as prohibiting him from putting complaints in writing, prohibiting from taking breaks with his wife, and constructive discharge.

302.    The actions taken against Mr. Lane would dissuade a reasonable employee from making or supporting a complaint of discrimination.

303.    By engaging in the conduct described above, Defendant Amazon intentionally retaliated against Mr. Lane with malice or reckless indifference to Mr. Lane's federally protected rights to oppose practices that are prohibited by Title VII.

304.    As a direct and proximate result of Defendant Amazon's unlawful retaliation, Mr. Lane has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to his professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 15**
**42 U.S.C. § 2000e, et seq.**
**Retaliatory Hostile Work Environment**
**Mr. Dane Lane**

305.    Plaintiff Mr. Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

306.    Mr. Lane made numerous complaints against Defendant Amazon for the harassment and discrimination that he experienced and which created a hostile work environment, as well as administrative charges by him and his wife with the EEOC during his employment, and opposed the discriminatory practices and hostile work environment directed at himself and Ms. Schawe-Lane.

307.    By making complaints and an EEOC charge during his employment, and opposing the discriminatory practices and hostile work environment directed at himself and his wife and supporting his EEOC charge against Defendant Amazon, Mr. Lane engaged in protected activities under Title VII.

308.    Defendant Amazon was aware that Mr. Lane engaged in protected activity, as the complaints were made to Defendant Amazon, and Defendant Amazon was on notice of his and his wife's EEOC charges during their employment.

309.    Mr. Lane suffered severe or pervasive retaliatory harassment by his coworker, Mr. Tony Hughett, and other coworkers at Amazon after complaining about the harassment and discrimination he experienced.

310.    Mr. Lane perceived the working environment to be abusive or hostile.

311.    A reasonable man in Mr. Lane's circumstances would consider the working environment to be abusive or hostile.

312.    The retaliatory harassment by Mr. Lane's coworkers at Amazon occurred as a direct and proximate result of the complaints and EEOC charge Mr. Lane made during his employment, and as a direct and proximate result of his support of his wife's EEOC charge made during her employment.

313.    As a direct and proximate result of Defendant Amazon's unlawful retaliatory hostile work environment, Mr. Lane has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to his professional reputation, and other pecuniary and non-pecuniary losses, which damages would not have occurred but for Amazon's unlawful retaliatory hostile work environment.

**COUNT 16**
**42 U.S.C. § 2000e, et seq.**
**Constructive Discharge**
**Mr. Dane Lane**

314.    Plaintiff Mr. Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

315.    Defendant Amazon deliberately created working conditions that a reasonable person would perceive to be intolerable based on Mr. Lane's sex and his association with a person in a protected category, i.e., his wife, Allegra Schawe-Lane.

316.    These conditions included, but were not limited to, harassment, humiliation, retaliation and retaliatory rules calculated to encourage Mr. Lane's resignation as described herein.

317.    Mr. Lane perceived the working conditions that Defendant Amazon created to be intolerable.

318.    Defendant Amazon created these intolerable working conditions with the intention of forcing Mr. Lane to resign his position.

319.    Because of the intolerable working conditions Defendant Amazon created, Mr. Lane resigned his position with Amazon.

320.    As a direct and proximate result of Defendant Amazon's constructive discharge, Mr. Lane has incurred damages including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to his professional reputation, and other pecuniary and non-pecuniary losses.

**COUNT 17**
**Americans with Disabilities Act**
**42 U.S.C. § 12101, et seq.**
**Failure to Provide Reasonable Accommodations**
**Mr. Dane Lane**

321.    Plaintiff Mr. Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

322.    Defendant Amazon failed to provide Mr. Lane with reasonable accommodations as required by the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq.

323.    Throughout the relevant period, Mr. Lane had a disability or was regarded as having a disability by Defendant Amazon.

324.    With or without reasonable accommodations, Mr. Lane was qualified for the job with Defendant Amazon.

325.    Despite numerous requests over the course of Mr. Lane's employment with Defendant Amazon, Defendant Amazon failed to provide reasonable accommodations to Mr. Lane.

326.    As a direct and proximate result of Defendant Amazon's failure to provide reasonable accommodations, Mr. Lane incurred damages including but not limited to humiliation, loss of enjoyment of life, damage to his professional reputation, and pecuniary and non-pecuniary losses.

**COUNT 18**
**Kentucky Civil Rights Act**
**KRS § 344, et seq.**
**Hostile Work Environment Because of Sex**
**Mr. Dane Lane**

327.    Plaintiff Mr. Lane incorporates by reference paragraphs 1-187, paragraphs 283-296 (Count 13) and paragraphs 314-320 (Count 16) as if fully set forth herein.

328.    Mr. Lane was subjected to a hostile work environment by Defendant Amazon.

329.    This hostile work environment was because of Mr. Lane's sex and sex stereotyping, as described above.

330.    As a direct and proximate result of Defendant Amazon's unlawful sex discrimination, Mr. Lane incurred damages, including but not limited to lost wages, humiliation, loss of enjoyment of life, emotional distress, damage to his professional reputation, personal indignity, other intangible injuries, and other pecuniary and non-pecuniary losses.

**COUNT 19**
**Kentucky Civil Rights Act**
**KRS § 344, et seq.**
**Retaliation**
**Mr. Dane Lane**

331.    Plaintiff Mr. Dane Lane incorporates by reference paragraphs 1-187, paragraphs 297-304

(Count 14), paragraphs 305-313 (Count 15) and paragraphs 314-320 (Count 16) as if fully set

forth herein.

332.    Mr. Lane was engaged in protected activities as defined by the Kentucky Civil Rights

Act, KRS § 344, et seq.

333.    He was disadvantaged by acts of his employer because of the said protected activities.

334.    As a direct and proximate result of Defendant Amazon's unlawful retaliation, Mr.

Schawe-Lane incurred damages, including but not limited to lost wages, humiliation, loss of

enjoyment of life, emotional distress, damage to his professional reputation, personal

indignity, other intangible injuries, and other pecuniary and non-pecuniary losses.

**COUNT 20**
**Premises Liability**
**Mr. Dane Lane**

335.    Plaintiff Mr. Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

336.    Mr. Lane was on Defendant Amazon's property because of his status as an employee of

Amazon.

337.    Amazon owed Mr. Lane a duty of care, and that duty extended to the care of Ms. Schawe-

Lane and Mr. Lane's car, which was parked on a parking lot made available by Amazon to

Amazon employees.

338.    By permitting an individual to severed the brake lines of Ms. Schawe-Lane and Mr.

Lane's car, Amazon breached its duty of care.

339.    Because of Amazon's breach of its duty of care, Ms. Schawe-Lane and Mr. Lane's car

was damaged, and Mr. Lane was put at risk of injury or death.

340.    As a direct and proximate result of Defendant Amazon's breach of its duty of care to Mr. Lane, he has incurred damages including but not limited to property damage, lost wages, loss of enjoyment of life, emotional distress, and other pecuniary and non-pecuniary losses.

**COUNT 21**
**Breach of Contract**
**Mr. Dane Lane**

341.    Plaintiff Mr. Lane incorporates by reference paragraphs 1-187 as if fully set forth herein.

342.    Defendant Amazon offered to engage Mr. Lane as an employee at Amazon, and Mr. Lane accepted the offer.

343.    When Mr. Lane began his employment, Defendant Amazon had a non-discrimination policy, which contained representations as to benefits to be extended to Mr. Lane, including that Defendant Amazon prohibited discrimination based on sex and gender identity, stating in part that "Amazon is an equal opportunity affirmative action employer, and … discrimination or harassment against any employee … on the basis of … sex … [or] gender identity … will not be tolerated."

344.    Defendant Amazon adopted this non-discrimination policy prior to Plaintiff Mr. Lane's commencement of employment with Amazon.

345.    Defendant Amazon's non-discrimination policy became a binding contract once Mr. Lane accepted it and continued to work despite not being required to do so.

346.    Defendant Amazon breached its contract with Mr. Lane when it discriminated against him on the basis of his gender identity.

347.    Because of Defendant Amazon's breach, Mr. Lane suffered damages, including but not limited to lost income, humiliation, loss of enjoyment of life, emotional distress, damage to his professional reputation, and other pecuniary and non-pecuniary losses.

**MANDATORY RECOVERY OF ATTORNEY FEES AND COSTS**

348. Plaintiffs incorporate by reference all previous paragraphs 1-347 as if fully set forth herein.

349. Plaintiffs are mandatorily entitled to recover their attorneys' fees and costs pursuant to provisions of the Americans with Disabilities Act, Fair Labor Standards Act, and Title VII.

**JURY DEMAND**

350. Plaintiffs hereby demand a trial by jury of all issues triable by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Ms. Allegra Schawe-Lane and Mr. Dane Lane respectfully request that this Court:

A. Declare that the acts, practices, and omissions complained of herein are unlawful and violate Title VII, the ADA, the Fair Labor Standards Act, the Kentucky Civil Rights Act, and the Kentucky Wages and Hours Act;

B. Permanently enjoin Defendant Amazon, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from engaging in the unlawful conduct of discriminating against employees who are transgender and/or who have undergone or are undergoing a gender transition, or who are associated with employees who are transgender and/or have undergone or are undergoing a gender transition;

C. Order Defendant Amazon to institute and carry out policies, practices, programs, and training which provide equal employment opportunities for employees who are transgender, have undergone a gender transition, or are undergoing a gender transition, and which eradicate the effects of Defendant Amazon's past and present unlawful employment practices;

D.  Order Defendant Amazon to institute and carry out policies, practices, programs, and training which provide equal employment opportunities for employees with disabilities, including the provision of reasonable accommodations, and which eradicate the effects of Defendant Amazon's past and present unlawful employment practices;

E.  Order other affirmative relief necessary to eradicate the effects of Defendant Amazon's unlawful employment practices;

F.  Direct Defendant Amazon to pay Ms. Schawe-Lane and Mr. Lane for past and future non-pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial;

G.  Direct Defendant Amazon to pay Ms. Schawe-Lane and Mr. Lane punitive and special damages for its malicious or reckless conduct described in the foregoing paragraphs, in an amount to be determined at trial;

H.  Award Ms. Schawe Lane's and Mr. Lane's attorneys' fees, costs, and disbursements as provided by law; and

I.  Award such additional relief as justice may require.

Dated: August 9, 2017

Respectfully submitted,

**s/ Amanda R. Walker**
Amanda R. Walker (KY Bar No. 93726)
The Zoppoth Law Firm
635 West Main Street, Suite 400
Louisville, KY 40202
Telephone: (502) 568-8884
Facsimile: (502) 568-1319
arw@zoplaw.com


**s/ Bradley S. Zoppoth**
Bradley S. Zoppoth (KY Bar No. 96176)
The Zoppoth Law Firm
635 West Main Street, Suite 400
Louisville, KY 40202
Telephone: (502) 568-8884
Facsimile: (502) 568-1319
bsw@zoplaw.com

*Attorneys for the Plaintiffs*